UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                             Case Number 25-20030

v.                                          Honorable David M. Lawson

RICARDO FONVILLE,

                Defendant.

_____/

## OPINION AND ORDER GRANTING MOTION TO SUPPRESS EVIDENCE

Defendant Ricardo Fonville is charged with drug crimes stemming from a sting incident that occurred on March 19, 2024 at a truck stop in Frenchtown, Michigan.  Fonville was present at the scene and arrested at a location remote from the actual staged transaction.  He has filed a motion to suppress evidence gathered from three cell phones that  were seized from his automobile during a search incident to arrest on the ground that there was no probable cause for the arrest. The Court conducted an evidentiary hearing on January 27, 2026 and now finds that probable cause for Fonville's arrest was lacking.  The motion to suppress the cell phones will be granted.

I.

According to the parties' submissions and the evidence presented at the hearing, in March 2024, the Department of Homeland Security was conducting an investigation of a drug trafficking operation in Texas when it secured the cooperation of a witness who is a semi truck driver.  The witness is referred to by the pseudonym SOI-1 in government's briefing.  SOI-1 told investigators that he was in contact with "El Brujo," who was a member of a Mexican drug cartel involved in moving cocaine from Juarez, Mexico through El Paso, Texas and on to other locations in the United States. SOI-1 received a load of cocaine in Texas for delivery to Michigan in mid-March

2024.  On March 19, 2024, the drugs were seized from SOI-1's truck by law enforcement, and SOI-1 continued on his way to Michigan.

Shortly after arriving in Michigan, El Brujo contacted SOI-1 and told him to drive to the Loves Travel Plaza in Frenchtown, Michigan to deliver the load of cocaine.  SOI-1 met up with agents who then loaded sham drugs into his trailer resembling the seized shipment in quantity and appearance.  Upon arriving at the travel plaza, SOI-1 called a phone number given to him by El Brujo, and SOI-1 was told to "look for a white pickup truck."  SOI-1 disclosed the above details of the handoff to law enforcement before the defendants arrived at the travel plaza.

Daniel Ghareeb, a Department of Homeland Security agent, was the only witness who testified at the hearing.  He was part of the surveillance team and was on the scene for about 90 minutes before the arrival of a white F-250 pickup truck.  He explained that several aspects of the transaction were recorded by the truck stop's surveillance cameras.  Movements were observed by the agency's aerial unit and were relayed to the agents on the ground.  Hr'g Exs. 1, 4, 5.  The audio channels were admitted as separate exhibits.  Hr'g Exs. 2, 3.

Soon after the phone call from SOI-1, at timestamp 0:10 on the government's aerial footage from the scene, Ex. 1, a white Ford pickup truck was seen entering the travel plaza parking lot. Ghareeb said a blue Chevrolet sedan (some of the recorded dialog referred to it as an Impala, others a Malibu) also arrived, and the video depicts the blue Chevy sedan following three to four car lengths behind the truck.  Agents at the scene were able to observe the blue sedan and its movements throughout the encounter.  Both vehicles drove through the lot to the rear parking area typically reserved for semi trucks (timestamp 0:28).  The white pickup pulled up in front of SOI-1's semi, which was parked in a row with other trucks, while the blue sedan circled around behind the row of parked trucks (1:03-1:18).  The pickup truck then pulled away and circled the row of

parked semi trucks behind the blue sedan.  The pickup then stopped in front of SOI-1's semi truck again.  By that time, the blue sedan had driven off and parked at the front of the travel center (1:42-1:50).

Co-defendant Justin Horne was seen getting out of the white pickup, talking to SOI-1, then handing off cash in exchange for a key to the semi trailer.  Horne then approached the back of the trailer to open the doors, at which point agents moved in and arrested him.  Shortly after agents converged on SOI-1's semi truck, the blue sedan pulled out of its parking slot and drove part of the way back around toward the semi parking area, then reversed course and headed toward the exit to the travel plaza (5:09).

The audio traffic indicates that once the pickup driver was arrested, other officers were ordered to detain the blue sedan to identify the driver.  Before that, SOI-1 had provided the agents with a text message from the supplier, "El Brujo," that contained a photo of a dollar bill and mentioned the name "erick."  Hr'g Ex. 11.  Ghareeb explained that the serial number on the currency was a key or token to confirm the identity of the customer with the courier.

The blue sedan left the travel plaza and drove toward the truck lot.  It then proceeded to the exit of the plaza, but police vehicles blocked its path.  As the car seemed about to leave the scene, agents converged and stopped it.  Defendant Ricardo Fonville was the driver and sole occupant.  The agents obtained Fonville's identification and then immediately arrested him.  The arrest was recorded on a body camera worn by a Michigan State Police officer participating in the operation. Hr'g Ex. 7.  Fonville's vehicle was searched incident to the arrest, and three cell phones were recovered.  Ghareeb testified that he based his decision to stop and arrest Fonville on the driving pattern of the blue sedan, the amount of drugs involved, and the amount of money to be exchanged in the transaction.

Defendants Fonville and Justin Horne were indicted on January 23, 2025 on charges of conspiring to distribute controlled substances. Fonville filed his motion to suppress the cell phones seized during his arrest at the truck stop, contending that the agents did not have probable cause to arrest him, so the search incident to the arrest is invalid.

II.

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Liberty Coins, LLC v. Goodman*, 880 F.3d 274, 280 (6th Cir. 2018) (quoting U.S. Const. amend. IV). Searches and seizures generally are "unreasonable if [they are] not conducted pursuant to a warrant issued upon probable cause." *Ibid.* (citing *Camara v. Municipal Court of City & County of San Francisco*, 387 U.S. 523, 528-29 (1967)). The seizure of the cell phones that Fonville wants suppressed in this case was accomplished without a warrant. Typically, the warrantless seizure of personal property, such as a cellular telephone, is unreasonable. *See United States v. Place*, 462 U.S. 696, 701 (1983).

However, a well-recognized exception to the warrant requirement covers a search incident to a lawful arrest. *See Weeks v. United States*, 232 U.S. 383, 392 (1914). "The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (citing *United States v. Robinson*, 414 U.S. 218, 230-34 (1973); *Chimel v. California*, 395 U.S. 752, 763 (1969)). But the application of this exception presupposes a *lawful* arrest. *United States v. Campbell*, 486 F.3d 949, 955 (6th Cir. 2007) (citing *United States v. Robinson,* 414 U.S. 218, 235 (1973)).

It is well established that the Fourth Amendment forbids the police from arresting an individual unless they are aware of facts that establish probable cause that the person was committing or had committed a crime. *Dunaway v. New York*, 442 U.S. 200, 208 (1979).

- 4 -

"Probable cause to arrest exists where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Hinchman v. Moore*, 312 F.3d 198, 204 (6th Cir. 2002). The Sixth Circuit delineates the spectrum of suspicious circumstances that may support either reasonable suspicion for an investigatory detention or probable cause for a full arrest as follows: "Reasonable suspicion 'is obviously less demanding than . . . probable cause,' which itself 'is not a high bar' and one that requires only a 'substantial chance of criminal activity.'" *United States v. McCallister*, 39 F.4th 368, 374 (6th Cir. 2022) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *D.C. v. Wesby*, 583 U.S. 48, 56-57 (2018)). "And both reasonable suspicion and probable cause fall below the preponderance of the evidence standard, which requires criminal activity to be 'more likely than not.'" *Ibid.* (quoting *Pineda v. Hamilton County*, 977 F.3d 483, 491 (6th Cir. 2020)).

Another basic proposition is that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search [or seize] that person." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). "Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person." *Ibid.* "This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be." *Ibid.*

Nevertheless, proximity to persons seen to be engaged in suspected criminal activity is an indication that may contribute to a totality of circumstances justifying reasonable suspicion or probable cause, at least where other indicators link the suspects in some way. For instance, "in *United States v. Belakhdhar*, 924 F.3d 925, 928 (6th Cir. 2019), the Sixth Circuit recognized that

vehicles driving in tandem is a factor law enforcement officers may consider when determining whether the drivers are engaged in drug trafficking." *United States v. Simms*, No. 20-9, 2020 WL 7769092, at *6 (E.D. Ky. Dec. 30, 2020).

The circumstances of the arrest are undisputed for the purposes of this motion. The agents did not have access to the video evidence presented at the hearing; the truck stop surveillance footage was subpoenaed well after the fact. However, the agents were in communication with each other and reported their observations of the vehicles' movements. *See* Response Br. at 13, ECF No. 55, PageID.191.

The government acknowledges that the agents did not know the identities of either Horne or Fonville before their arrests and in fact asserts that their names "are irrelevant" to its argument. *Id.* at PageID.183 n.2. Instead, it relies heavily on the movement of the two vehicles, which it characterizes as "tandem driving," despite the absence of any other connection between the cars or between defendant Fonville and the drug trafficking scheme, to justify the stop and arrest of the drivers of both vehicles at the scene, citing *Belakhdhar* and *United States v. Medina-Gasca*, 739 F.2d 1451 (9th Cir. 1984). However, the facts here are conspicuously distinguishable from cases where coordinated movements of vehicles were found sufficient to justify a stop or arrest, and the evidence presented here does not even measure up to reasonable suspicion, let alone probable cause for a full arrest.

In *Belakhdhar*, the Sixth Circuit reversed a district court's grant of a motion to suppress evidence seized during a traffic stop, concluding that the district court reasoned in error that evidence of "tandem driving" by two vehicles, where one is suspected to be involved in drug trafficking, could not alone suffice to establish reasonable suspicion for an investigatory stop of both. The *Belakhdhar* panel discussed previous decisions on point, including an unpublished

decision in *United States v. Carrillo-Alvardo*, 558 F. App'x 536 (6th Cir. 2014), where investigators saw that a semi truck arrived at a known drug distribution hub for unloading, and soon after "a convoy of vans soon left the shop, dividing into two groups, each set driving in tandem." *Belakhdhar*, 924 F.3d at 928. The Sixth Circuit observed that those circumstances were sufficient to justify investigative stops of all the vans involved in the "convoy."

In support of its holding, the *Belakhdhar* panel cited the Tenth Circuit's decision in *United States v. Rodriguez-Rodriguez*, 550 F.3d 1223 (10th Cir. 2008), where it was held that "[s]ufficient evidence that two vehicles are driving in tandem plus evidence that one vehicle contains contraband can provide probable cause sufficient to support arresting the driver of the other vehicle," *id.* at 1228. The court of appeals also found instructive the Tenth Circuit's decision in *United States v. Zamudio-Carrillo*, 499 F.3d 1206 (10th Cir. 2007), where probable cause to pull over both cars was found to exist where an officer observed two vehicles with consecutively numbered specialty license plates driving a quarter mile apart along a Kansas interstate highway, the first of which contained a false floor compartment.

However, the *Belakhdhar* court also distinguished cases like *United States v. Robert L.*, 874 F.2d 701 (9th Cir. 1989), *overruled in part on other grounds*, *United States v. Santamaria-Hernandez*, 968 F.2d 980, 982 (9th Cir. 1992), where it was found that reasonable suspicion was lacking based on observation of supposed "tandem driving" for only a brief distance (in *Robert L.*, the "tandem driving" was observed by an officer for less than one kilometer or approximately 2/3 of a mile). In *Robert L.*, the Ninth Circuit emphasized that "the briefest of observations" of supposed "tandem driving" could not sustain a reasonable suspicion, contrasting the facts there with cases where coordinated movements were found sufficient to justify multiple stops, such as where cars were seen driving together for 70 miles; where three vehicles were seen driving closely,

parking bumper-to-bumper, and traveling together again later; and where "driving in tandem" was observed "for approximately an hour." *Id.* at 704 (citing *United States v. Medina-Gasca*, 739 F.2d 1451, 1453 (9th Cir. 1984); *United States v. Saenz*, 578 F.2d 643, 646-47 (5th Cir. 1978); *United States v. Villarreal*, 565 F.2d 932, 936 (5th Cir. 1978)). As the Ninth Circuit emphasized in *Robert L.*, the court of appeals found it significant — and fatal to the finding of reasonable suspicion — that other than the "briefest of observations" of proximate driving, there was "no other evidence of a connection between the two drivers." 874 F.2d at 704.

There was no evidence presented in this case of any corroborating circumstances suggesting that the white pickup truck and the blue sedan were in any way associated, such as those other incidental associations that were observed in the cases noted above. The two vehicles were seen in proximity for only "the briefest" time — less than two minutes, at most — after which they went their separate ways, with one parking near the informant's semi truck as the occupant engaged in a suspected drug transaction, while the other parked far out of sight near the entrance to the travel plaza facility. The government has not highlighted any other evidence of coordinated activity by the drivers of the white pickup and blue sedan other than their arrivals at the scene at the same time and the brief sortie through the same area of the parking lot. Moreover, the information relayed to the government's agents by SOI-1 did not include any mention of a blue sedan, and there has been no suggestion that investigators had any other information in hand identifying Fonville or Horne individually as participants in the drug trafficking scheme.

As a matter of fact, there was no "tandem driving" here, as that term is used in the cases where reasonable suspicion was found. The vehicles were not observed over any extended time or distance, nor was any other inherently suspicious coordinated movement observed. In short, the government here points to nothing more than the defendant's mere proximity, for the briefest

span of time, nearby the vehicle of a person who subsequently was seen engaging in a monitored drug deal.  The cases discussed above establish that such a tenuous connection between suspects cannot sustain probable cause for arrest.

Moreover, in the cases relied on by the government, tandem driving alone was found to support only reasonable suspicion to justify a detention and further investigation under *Terry v. Ohio*, 392 U.S. 1 (1968), not probable cause to arrest.  *See Belakhdhar*, 924 F.3d at 928 (stating that "[a]ssuming sufficient evidence of tandem driving," the observation can "support reasonable suspicion").  Aside from the paucity of evidence of tandem driving, the government has not offered sufficient evidence of probable cause to arrest Fonville at the travel plaza.  It did not present any argument in its briefs on a theory that Fonville was detained under *Terry* for further investigation, where additional evidence discovered thereby allowed the detention to mature into a full-blown arrest.  The Court cannot make that argument for it.  *In Re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, 143 F.4th 718, 725 (6th Cir. 2025) ("In our adversarial system, we follow the principle of party presentation, which means that we 'rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.'") (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)).

At the hearing, the government for the first time suggested that the discovery of Fonville's first name — Ricardo — during his detention by the agents provided a link to the transaction because the text message from "El Brujo" mentioned the name "erick."  That argument also was not briefed by the government, and the defendant had no opportunity to reply to it.  Moreover, the government asks too much of the fact that two distinct names share a few common letters as augmenting the observed vehicle movements to furnish a basis to "warrant a man of reasonable caution in the belief that an offense has been or is being committed."  *Hinchman*, 312 F.3d at 204.

The agents had no probable cause to arrest Fonville, and therefore they cannot justify the seizure of the three cell phones from his car as a valid warrantless search incident to an arrest.

III.

The seizure of the three cell phones from defendant Ricardo Fonville and his automobile on March 19, 2024 violated the Fourth Amendment.  Suppression of the evidence is necessary to address this violation.

Accordingly, it is **ORDERED** that the defendant's motion to suppress evidence (ECF No. 51) is **GRANTED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   February 9, 2026